Good morning, Mark Garagos, GERAGOS for Mr. Yousefian, who is the plaintiff and the appellate in this case. If it please the court, in reviewing this matter, it seems that the City of Glendale and the two officers take the position that because a case was filed, that their DA had filed the case, that that seems to end the probable cause analysis in this case, which to me is astonishing, frankly. You have before you what at best can be characterized as a tawdry set of facts. You have an officer coming upon my client in his own home, who called at 9-1-1 and who has visible injuries on him, is not arrested immediately, but is talked to, turns over his information to the officer, tells the officer that he's estranged from his wife, that she's cheating on him, that she's got pornographic pictures there, and the officer's solution is to then arrest this client, go to the hospital, meet my client's wife, and immediately give her his personal cell phone number and start an affair with her. The DA, when they get to Mr. Singer, who was the filing deputy in Glendale, when he gets this matter, oh mind you, the next day, she then takes some drugs, calls the cop, this same officer back, who she's about to have an affair with, and says she found the drugs in the trunk of his car, which by the way, the police had already searched. They take that package to the DA's office, and not unbelievably, Mr. Singer rejects it, and that isn't enough for them. They then go on to kind of a, rather, and I'll use it a second time, astonishing situation where they put him into, they have him come down to the jail, which by the way, he had already bailed out on $30,000 bail after spending a period of time there, and they interview him, and he says, I'd like to tape record the interview, and they say, don't worry about that, we've got a tape recorder here, we'll tape your interview. Well, then miraculously, or mysteriously, the tape recorder malfunctions, the video recording equipment in this beautiful Glendale city jail, which they've just spent tens of millions of dollars building, state of the art, is not utilized, and reports are then prepared, saying that my client looks like he's on a central nervous system stimulant, they go into, he appeared to be evasive and all kinds of other things, they don't tell the DA when they go back to try and get a filing, they don't tell him that in fact, he had volunteered to take a polygraph, he had volunteered to take a hair follicle test, that he was willing to do whatever it was, and in fact, they had records that showed he had taken drug tests, and was not under the, or was not under the influence on any of the days when he had taken drug tests. None of this is disclosed to the DA, none of this is disclosed to the magistrate, the magistrate at the preliminary hearing kicks the drug counts, the two drug counts, holds them to answer on the assault and the elder abuse, and it's only the day before trial, when his trial counsel had received back the text messages from the carrier, and there was over 3,000 text messages, that we then find out that not only are they carrying on this affair, but they are plotting on how to perjure themselves if they are asked about it at trial, number one, number two, they are plotting about the inconsistencies in the statements by Meridian, who is the purported victim in this case, and his wife, and how they are inconsistent and they make no sense. What we have here, I think, and we quoted the cases in the briefing, is not a question of what was known to the DA at the time, it was the integrity of the decision that was made to the DA. I would... Why isn't the inquiry, why doesn't the inquiry begin about the time of the arrest and whether there was probable cause to arrest him for the assault and the elder abuse at the time that this bad cop, we all know he's a bad cop and he's lost his job, but at the time he arrested him, wasn't there probable cause to arrest him? No, I don't think there was, that's why I quoted the... Because he denied it and we've seen the pictures of the father-in-law and they're pretty gruesome and there was a bloody candlestick, so isn't that enough for an officer to decide that there's probable cause to arrest him for assault? I don't think so. Let's say we disagree with you. Does that end, and we find that there was probable cause at that time, is that the end of the case? No, I don't think that it is at all. I think that when you go to the DA and the DA rejects the case saying that there was not probable cause, when they go on and conspire, if you will, to create a case against this gentleman who's got no prior record or anything else, no, I don't think that that is. That's your malicious prosecution. Correct. Do you still have a Monell claim against the city? Well, we want a Monell claim against the city and I would say that the Monell claim is predicated specifically on all of the things that the city tolerated. When finally Lisiarga tells or divulges this information to Glassic, who by the way is the head of internal affairs, Glassic tells him, oh, that's not a problem, basically gives him the short shrift and says, a lot of the officers do that, that's kind of what their dating pool is in the city of Glendale, is they meet people and do speed dating when they do speed arresting. The city basically takes no action and in fact they double down on this kind of outrageousness. The city's response is, okay, Glassic knew about it eight months before. Did Glassic disclose this? No. Did he tell the DA? No. So what do they do? When the defense lawyer provides the text messages, the city then opens up an investigation and guess who they mention? Glassic, the guy who deep-sixed the information eight months before and said, it's not a problem because we all do that. So I think that in and of itself shows you what the problem is. Going back to the probable ... There's probably no doubt that there's some problems with what was done here, but let's go back and relate them to what your claim is. The first claim about the false arrest, you know, this cop, whatever his name was, was not having an affair with the lady, hadn't even met the lady. He came and he found this elderly person had been beaten, maybe in self-defense, maybe not. It wasn't unreasonable for the officer to reach the conclusion that the elderly man was the victim, not the young man. That's why I cited that Hernandez case, because the Hernandez case is almost identical. My client's the one who calls 9-1-1. In Hernandez, she called 9-1-1. They're in their house, and nobody talks about the ... There's a provision under the California Code, 836, a misdemeanor not committed in the presence. He makes a felony arrest. Well, arguably ... Well, the cop sees somebody who's been beaten, and he believes story that he was the assailant of an elderly person, and he makes an arrest. Why is that a false arrest? Well, because of all the factors I said. I think a reasonable jury could ... He told the whole story about classic and all of that. None of that happened. He was not having an affair with that lady. Well, isn't that something for the jury to decide if there is a reasonable, probable cause? Isn't the jury the ones who would decide whether or not, when he's in his own house, when he's making the 9-1-1 call, when he had injuries himself, and when he's explaining all of these things that it seems concocted, and when he says, by the way, here's the cane. It's got my blood on it, because he hit me. By the way, as an aside, that cane gets booked into evidence and mysteriously disappears, also is destroyed at Glendale PD. I think that that's a jury determination. All those things happen later, at the time of the arrest. There's no reason to think ... Judge Gould, if I could ask a couple of questions here. First of all, to let counsel know my perspective on it. I'm not really seeing a good claim about the fact he's arrested at first, because of the evidence that might show probable cause. But what I'm concerned about, on your side of the case, is whether he has a good 1983 claim based on the drug charges being made against him. He was already in custody at the time they were made against him, but does he have damage just from those charges hanging over his head? Do they restrict his travel or other rights? Yes. 1318 of the Penal Code in California, I believe it's subsection C, says specifically he was released on his own recognizance after the drug charges. It was originally the assault case was rejected, along with the drug. Then they filed it with the drug charges. He went to court. He was released on his own recognizance. When you're released OR on a felony in the state, you're not allowed to leave the state. You're restricted. Additionally, under 977 of the Penal Code, you must appear for all appearances. You must attend the preliminary hearing and arguably when you go to trial. As an aside, other than the drug charges, and maybe I'm answering too much, but when he's held to answer as a lawyer and an information is filed under 6068 of the Business and Professions Code, it invokes 6002, he then has to disclose the information being filed to the state bar as well and to his malpractice insurance carrier and then has to go through, and the damages would be obviously prior to being held to answer, that you've got a lawyer who has to do double the work because you have to deal with the drug charges as well. Mind you, one of the things that they had claimed is that his fingerprints, the officer had lied to him and said his fingerprints were on the baggies of the dope. That was not the case. The lawyer had to do investigation and pay for those things as well. So yes, he does have damages from the drugs on the drug charges. And I will tell you, even though the magistrate, Judge Hagerty, dismissed the drug charges, this is a criminal defense lawyer whose primary place of practice was the Pasadena-Glendale-Burbank area. He's now standing for a preliminary hearing on drug charges, which I would submit are infinitely worse when you're a lawyer being accused of than getting into a fracas with your estranged wife's father. And he's having to suffer that indignity in the Burbank courthouse where all of the Glendale cases run through. But you have to put that in the context of whether there's a seizure, don't you, in order to have your malicious prosecution claimed, correct? Correct. And you're saying the seizure is his restriction on travel. Correct, under the law. Wasn't he under a similar restriction based on the assault charge? No, because he had on the assault charge, at least initially, he bailed out on, which is the $30,000 bail. And there were no restrictions on that? The only restriction on bail, and there's a difference in the code, for bail you can travel anywhere as long as you show up to court. On an OR release, you can't leave the state under an OR release without court permission. And if you have any other questions, I'll reserve the minute 20 that I've got left. Thank you. Good morning. May it please the court, my name is David Lawrence. I represent Appali Michael Lizarraga. I'd like to reserve five minutes for my co-counsel, Ms. Mauer, who represents Detective Kimbeckian and the city of Glendale. I'd like to address first this issue of the seizure. Counsel raised in their reply, Penal Code Section 1318, which imposes in the OR situation a restriction on the right to travel. There was no such restriction on the right to travel in this case. And I would cite the court to the record, excerpts of record 462, the only restrictions on the appellant in this case were that he possessed no weapons, that he possessed no drugs, and he had no contact with the victims. Now, counsel is saying that Penal Code Section 1318 automatically imposes a restriction on the right to travel, and it does not. And there's a California Supreme, or California Court of Appeals case directly on point, People v. Mohamed, 162-4920. There has to be a written agreement in the OR release situation in order for there to be the restriction on travel. There was no such agreement in this case. There was no such agreement in People v. Mohamed, and therefore it did not apply. And this was first brought up in the reply brief, is that right? First brought up in the reply brief, which is why I think it's very important for the court to be aware of People v. Mohamed, because it clearly states there has to be the written agreement in order to impose the restriction on the right to travel in an OR release situation. So our position is that there was... Excuse me, on that case, is that a misdemeanor or a felony case? I'm sorry? Was that a misdemeanor or a felony case? In People v. Mohamed, I'm not sure whether it was a misdemeanor or a felony case, but it was the application of Penal Code Section 1318. But it said it has to be a signed, written agreement by the defendant in order for those conditions to apply. So all we had in terms of restrictions on the appellant in this case were the restrictions that I mentioned. No weapons, no drugs, and no contact with the victims. That's not sufficient... Counsel, let me ask a question on it. If we assume there was probable cause to arrest him, but that after the arrest, a policeman chins up a false claim with the wife with whom he's having an affair, and they fabricate evidence, they do everything to get charges against him. Assuming all that for sake of an argument, does he have his 1983 claim that is, is just having the felony charges against him going to be enough? Or is there some seizure required beyond whatever restraint came from that? I don't think there's a 1983 claim because there's immunity under Reberg v. Polk for conspiracy to provide false testimony. But more importantly, this notion that evidence was ginned up and witnesses were prepared to address inconsistencies is simply not supported by the record. The only part of the record cited by appellant in this case for that are records at 690 and 694. It was a simple conversation between Noor Yousefian and Michael Lizarraga where she said there's an inconsistency between where the victim and her wife say the chair was located, and Mr. Lizarraga says, oh, that should not be a big deal. That's it. That is the sum and substance of what appellant is claiming is the efforts by Mr. Lizarraga to get the witnesses to address inconsistencies in the testimony. So there is no evidence of that. Isn't he also saying that the whole story of drugs being in his car was false? Yes, but the evidence is clear that what happened is Officer Lizarraga went to Glendale Adventist to check on the victim and see what his injuries were. Noor Yousefian went to the hospital as well. She met him there. She asked him to come back to the home and search Mr. Yousefian's car. He refused to do that. She went back to her home. She searched the car, and contrary to what counsel said, the front part of the car had not been searched. Mr. Yousefian had only given permission to search the trunk of the car. Ms. Yousefian found drugs in the front part of the car. She called Officer Lizarraga. He came with his sergeant to the He took those drugs and he booked them in the evidence, and that's the extent of his involvement in those drug charges. Right, but she's doing all that after she's met this officer who has an affair with her. Only after having met him at the hospital, not after a relationship had developed. This was the same day of the arrest of Mr. Yousefian. This was no relationship at the time that she found the drugs and presented them to Officer Yousefian. He simply went there, saw the drugs, did what any police officer would be required to do if there's illegal drugs in paraphernalia, is take them and book them into evidence. And does the record really show exactly when the affair started? It certainly shows that it did not start prior to Ms. Yousefian presenting the drugs. Not prior to the arrest. Go ahead. Does the record prove the affair hadn't started before she tendered the drugs? Yes. Yes. There was no relationship before the tendering of the drugs. Absolutely no relationship at all. If I may, Judge Gould, on the officer's police report, which is I think attached to the opinion of the court below, it gives his chronology of what happened and it shows that he arrested him and then that she later, it said here after he arrested the plaintiff and looked into the trunk and looked in the camera and it says then Yousefian's wife Nora arrived on the scene with her two young children and that's when she found or says she found the according to his report and that's I think consistent with what everybody else has said. Right. The relationship developed later. So our position is there was clearly probable cause to arrest. There's probable cause to arrest. There's probable cause to prosecute. There was no seizure for purposes of a malicious prosecution claim. The district court did not even get to the question of qualified immunity, which I submit there was clearly qualified immunity available to Officer Lizarraga in this case. He did not cause the prosecution for the drug charges. His sole involvement in that was to take possession of them and book them into evidence. His involvement in this case was really very minimal. He went to the scene. He observed Mr. Maradian on the floor in a pool of blood with glass and blood everywhere. He saw Mr. Yousefian, who was just a little over half the age of Mr. Maradian, who was uninjured. This notion that he was bruised and there was blood on a cane, not supported by the record. He was not injured. I think all of the evidence was clear that there was probable cause to believe that Mr. Yousefian had committed an assault, an elder abuse on Mr. Maradian and that the arrest was lawful. It's unfortunate that this relationship developed between Mr. Yousefian or Mr. Lizarraga and Ms. Yousefian, but it has nothing to do with the assault charges or the drug charges. For a variety of reasons, summary judgment was appropriate in this case. There was probable cause. I believe the collateral estoppel issue precludes a claim in this case. There was no seizure for malicious prosecution purposes. Mr. Lizarraga did not cause the prosecution. He's entitled to qualified immunity. And frankly, even though the district court found against us, I don't think there's evidence that the plaintiff overcame the presumption of independence on the part of the prosecutor in issuing charges. So I think there's a smitty immunity as well in this case. I have about one minute left, and I don't want to use up all the time that my co-counsel will have. If there are no other questions for me, I will sit down and allow Ms. Maurer to address the court. Thank you. Good morning. May it please the court. My name is Anne Maurer, and I represent Officer Petrus Kambikian and the city of Glendale. And I obviously join in all the arguments that Mr. Lawrence made and just wanted to clarify a few points. Mr. Geragos said a few Kambikian submitted the case to the district attorney and the district attorney rejected the case. There's no evidence in the record of that. The evidence that we have is that Officer Kambikian submitted the matter on October 2nd, and the DA requested that he do some additional follow-up with regard to the drug charge. And specifically, he asked that Mr. Yousefian be requested or asked if he'd be willing to take a blood test and that a reenactment of some sort be done with the victim. And Officer Kambikian did both of those things. He called Mr. Yousefian during a phone-recorded conversation, asked him if he would take a blood test, and Mr. Yousefian refused, and that was documented in a report. And then Officer Kambikian did the reenactment, wrote a report about it, and submitted those documents back to the district attorney, at which point DA Singer did choose to file charges on October 31st. With regard to the alleged omissions by Officer Kambikian, the records of the hair follicle test, those were not even provided until February of 2008, so obviously that's not something that would have been provided to the district attorney in October of 2007. And with regard to the other two points of the polygraph and his offer to take a hair follicle test, those weren't material when taken into consideration with all of the facts that Detective Kambikian did put into the report, which were the assertions by the defendant that he was not guilty, that the drugs weren't his, the drugs were planted, he acted in self-defense, and everything that he said was put into the reports and given to the district attorney. And with regard to the Monell claim, counsel indicated that there was some eight-month lapse between Sergeant Glassick learning about the affair and the department doing anything, but in fact, at the earliest, according to the record, the comment was made in February of 2010 to Sergeant Glassick, who was a sergeant, not in charge of internal affairs, but a sergeant in internal affairs, he didn't tell anyone, and it was in May of 2010 that the text messages came to light. As soon as that happened, the department initiated an internal affairs investigation and ultimately obviously did terminate Officer Lizarraga. So unless there are no further questions, I would submit. Thank you. Thank you. I've got a minute left and I'll just... I'll give you another two minutes. Okay. The idea, somehow, that the probable cause determination would give Lizarraga the right to go forward with what he was doing and to answer Judge Gould, there's nothing in the record to indicate that there was a pre-existing relationship. We just don't know. I mean, I don't concede that other than that there's no other text messages. I don't know. I was astonished, and I don't think I'm naive. I was astonished to see that in Glendale, apparently, this is common practice to stop people, give them your personal cell phone number when you're a cop, and that's the dating method. Obviously, I would still go back to the idea that when he comes there, and it, to my mind, is no different than Hernandez, where she had called. She had made the 911 call. It was her house with the boyfriend. They arrest her, and there was a determination there, and obviously it's a district court and a northern district, but the fact remains that the idea that it's beyond dispute or that no reasonable jury could find it, I think, is belied by the fact that if you tell anybody who's not a lawyer this state of facts, it shocks them, and it's shocking. I understand why the city fights so hard. The last thing they want is for this case to get in front of a jury because I don't think that any jury is going to find that what both officers did and what Glendale did was appropriate conduct, and to my mind, this is exactly what 1983... That's unfortunately not the question, whether a jury can find it appropriate. Well, for a 1983 action, to some degree it is. There is a policy behind 1983, and the policy that we've built up over the years, the jurisprudence over it, I think that it is. I think that 1983 is designed as a curb or a check. I mean, that's kind of Justice Scalia's mantra, if you will, in trying to eliminate the exclusionary rule is, well, you've got 1983 to curb the conduct. Can you address the seizure question that counsel responded to? Because you did raise it for the first time in your reply brief, and I'm not criticizing that, but you say that he was under travel restrictions, and they say, no, he's not under travel restrictions. Yeah, I don't know what they're talking about. When you sign an O.R. release, you are required under the law to specifically seek court permission if you leave the state. That's always been the law. He's citing a case now that I believe, and I'll go take a look at it, but I believe was a different situation. It was a situation where somebody had been released on their O.R., and there was an O.R. document that did not have the language in it, and when they tried to violate the probation, I think that's what the case was, that they said, well, no, you weren't told. That is different than somebody, a lawyer, who is released O.R. and is presumed to know the law, which is 1318. Do we have the O.R. in the record here? I don't believe that we do. Ms. Mauer is shaking her head, so I'll give her five seconds of my time by proxy, but I don't believe that we do. I looked for it yesterday because I thought it may be a question that you would ask, but it's always been the case for practitioners that you understand that bail allows you to leave the state. O.R. does not, for whatever that's worth. I see that I'm out of time. Thank you. This argument will be submitted. Thank you all. That's the last case for oral argument. For the morning. Court will stand in recess for the morning.
judges: Gettleman, Reinhardt, Gould